# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**ARTHUR SAMPSON JR., ET AL.**       **CASE NO.  6:19-CV-00896**

**VERSUS**       **JUDGE JAMES D. CAIN, JR.**

**USAA CASUALTY INSURANCE CO.**       **MAGISTRATE JUDGE WHITEHURST**

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 7] filed by defendant USAA Casualty Insurance Company ("USAA") under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Arthur Sampson, Jr. and Connie Nichols oppose the motion. Doc. 9.

## I.
### BACKGROUND

This lawsuit is one of several pending in United States district courts, challenging the valuation systems used by car insurers to determine cash value of vehicles on total loss claims. Plaintiffs in this matter are two Louisiana residents who had insurance policies through USAA. Under the terms of these policies, USAA agreed to pay the owner the actual cash value ("ACV") of the insured vehicle upon the occurrence of a total loss. To determine the ACV, USAA used a valuation product known as the CCC One Market Valuation Report, which was developed by CCC Information Services, Inc. and sold to USAA and other insurance companies. Doc. 1, ¶¶ 7–13.

Plaintiff Sampson filed a claim under his collision coverage, after his 2012 Mazda 6 Sport was damaged in an accident occurring on or about February 8, 2017. *Id.* at ¶¶ 7–8,

18. Under the CCC valuation report, USAA determined that his vehicle had a base value of $6,643.00 and adjusted value of $5,999.00. *Id.* Plaintiff Nichols filed a claim under her collision coverage, based on flood damage sustained by her 2011 Buick LaCrosse CXL 4-Door Sedan on or about August 13, 2016. *Id.* at ¶¶ 9–10, 21. Under the CCC valuation report, USAA determined that her vehicle had a base and adjusted value of $11,340.00. Meanwhile, plaintiffs allege, the National Automobile Dealers Association Appraisal ("NADA") Guides suggest "clean retail" values of $6,725.00 and $14,175.00 for their vehicles, respectively, after adjustments "for mileage and options." *Id.* at ¶¶ 26–27.

Plaintiffs challenged the valuation reports by suit filed in this court on July 12, 2019. They allege that the CCC valuation system undervalued their vehicles by unjustifiably applying certain condition adjustments, and that USAA's intentional failure to fully compensate plaintiffs for the loss of their vehicles amounts to a bad faith breach of contract. *Id.* at ¶¶ 25–27, 30–39. They also maintain that USAA violated the Louisiana Insurance Code by using the CCC valuation system, because it is not one of the methods under Louisiana Revised Statute 22:1892(B)(5), and violated its duty of good faith and fair dealing under Louisiana Revised Statute § 22:1973. *Id.* at ¶¶ 40–49. Finally, they seek certification on behalf of USAA policyholders who have been similarly undercompensated based on the use of CCC One Market Valuation Reports. *Id.* at ¶¶ 50–60.

USAA now brings this motion to dismiss, asserting that (1) plaintiffs' conclusory allegations fail to show a violation of the Louisiana Insurance Code and (2) plaintiffs have not adequately alleged that they suffered any damages.

-2-

## II.
### LAW & APPLICATION

### A. *Rule 12(b)(6)*

Rule 12(b)(6) allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (US), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court can also consider matters of which it may take judicial notice, including matters of public record. *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success, but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.)*, 594 F.3d at 387.

### B. *Application*

#### 1. *Alleging a cause of action under the Louisiana Insurance Code*

Under the Louisiana Insurance Code, insurers who adjust "first party motor vehicle total losses on the basis of actual cash value or replacement" may only derive the vehicle's

cash value from certain sources, including "[a] fair market value survey conducted using qualified retail automobile dealers in the local market area as resources" or the nearest reasonable market, if there are no dealers in the local market area. La. Rev. Stat. § 22:1892(B)(5)(a). The "local market area" is defined under this statute as "a reasonable distance surrounding the area where a motor vehicle is principally garaged, or the usual location of the vehicle covered by the policy." *Id.* at § 22:1892(B)(5)(d). Alternatively, an insurer may use "the retail cost as determined from a generally recognized motor vehicle industry source" or a "qualified expert appraiser" agreed upon by the insurer and insured. *Id.* at § 22:1892(B)(5)(b)–(c). Louisiana Revised Statute § 22:1973 provides: "An insurer . . . owes to his insured a duty of good faith and fair dealing. The insured has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach."

USAA asserts that its valuation system complies with the fair market value survey described above, and that plaintiffs therefore cannot sustain a claim for statutory penalties. The full CCC valuation report for Sampson shows that the system used comparator vehicles from 78 to 136 miles away from the location of the insured to determine his vehicle's actual cash value.[1] *See* doc. 7, att. 3, pp. 7–9. The report for Nichols shows comparator vehicles

---

[1] The first page of the CCC reports for both plaintiffs' vehicles are excerpted in the petition. USAA maintains that plaintiffs cannot show a violation of the Louisiana Insurance Code because the remaining pages of the reports show that the CCC valuation system comports with the statutory provisions above. Because the full reports are referenced in and central to the complaint, the court may consider them as part of this motion to dismiss without converting it to a motion for summary judgment.

from 63 to 140 miles away. Doc. 7, att. 5, pp. 7–9. Plaintiffs complain that many of these vehicles were located through the national database Autotrader. USAA contends, however, that nothing in the statute prohibits it from "using the internet to conduct a survey of vehicles listed for sale by local dealerships." Doc. 15, p. 3. It also notes that some of the comparators were found in CCC's "inspected inventory." *See* doc. 7, atts. 3 & 5.

The court agrees that nothing in the Louisiana Insurance Code categorically excludes the use of databases like Autotrader. At this stage of the litigation, however, plaintiffs have adequately alleged that the CCC valuation system does not yield the local market survey contemplated under § 22:1892(B)(5). The court would require additional evidence to determine the viability of these claims, particularly relating to the nature of the "local market" and the comprehensiveness of results yielded from sources like Autotrader and CCC's inventory. The motion to dismiss should be denied on this basis, as this court has done for virtually identical claims. *See Prudhomme v. Geico Ins. Co.*, 2018 WL 1371240 (W.D. La. Feb. 9, 2018), *report and recommendation adopted*, 2018 WL 1368335 (W.D. La. Mar. 16, 2018). Additionally, plaintiffs' allegation that the CCC valuation system applied unexplained and unjustified condition adjustments to these base values satisfies both the breach of contract and § 1973 claims. *See Prudhomme v. Geico Ins. Co.*, 2015 WL 2345420, at *5 (W.D. La. May 14, 2015) (a viable breach of contract claim on an insurance policy gives rise to a claim under Louisiana Revised Statute § 22:1973).

### 2. *Failure to show damages*

USAA also argues that plaintiffs have not "adequately alleged" what injury they suffered from the CCC valuation system, and that their claims must therefore be dismissed. Specifically, it argues that plaintiffs unfairly compare the NADA "clean retail value" to the adjusted values yielded by the CCC valuation reports in order to demonstrate that their claims were undervalued. As it notes, courts have recognized that the "clean retail value" is just a starting point for valuation and that downward adjustments are necessary because "few vehicles are maintained in the excellent or 'clean' condition contemplated by the guide retail values."[2] *In re Scott*, 437 B.R. 168, 173–74 (Bankr. D.N.J. 2010).

In this matter, the difference in the two proposed values is over $700 in Sampson's case and over $2,800 in Nichols's case. The CCC valuation reports listed the plaintiffs' vehicles in "good" condition. To determine the meaning of that condition within the context of the NADA's valuation system, what deduction would be made from the NADA clean retail amount based on that condition and any other appropriate adjustments, and whether such adjustments would cover the gap between the two estimates would require evidence outside the scope of this motion. Accordingly, the motion to dismiss should likewise be denied on this basis.

---

[2] USAA also emphasizes a 2009 finding by the United States District Court for the District of Columbia that the methodology used by CCC and similar companies was more "accurate, detailed, [and] up-to-date" than the Kelley Blue Book and NADA Appraisal Guides. *See F.T.C. v. CCC Holdings, Inc.*, 605 F.Supp.2d 26, 42 (D.D.C. 2009). This finding is over ten years old and not binding on our court. Additionally, it has no bearing on the question of whether the methodology meets the Louisiana statute's definitions.

## III.
### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 7] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 19th day of February, 2020.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**