# United States Court of Appeals

FIFTH CIRCUIT
OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

October 30, 2023

Mr. Tony R. Moore
Western District of Louisiana, Lafayette
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

    No. 22-30351   United Svcs Automobile v. Sampson
                           USDC No. 6:19-CV-896

Dear Mr. Moore,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                            Sincerely,

                            LYLE W. CAYCE, Clerk

                            By: _____
                            Shea E. Pertuit, Deputy Clerk
                            504-310-7666

cc:
    Mr. Kenneth W. Dejean
    Mr. Mathew G. Drocton
    Mr. Rodger L. Eckelberry
    Mr. Gregory George Garre
    Mr. Christopher Paul Ieyoub
    Mr. Stephen B. Murray Jr.
    Mr. Kenneth David St. Pe'
    Mr. John Randall Whaley
    Mr. Kevin P. Zimmerman

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 6, 2023
Lyle W. Cayce
Clerk

Certified as a true copy and issued
as the mandate on **Oct 30, 2023**

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

No. 22-30351
_____

Arthur Sampson, Jr.; Lovely M. Feagins,

      *Plaintiffs—Appellees*,

versus

United Services Automobile Association; USAA General Indemnity Company,

      *Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:19-CV-896

_____

Before Barksdale, Southwick, and Higginson, *Circuit Judges*.

J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is VACATED, and the cause is REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

No. 22-30351

IT IS FURTHER ORDERED that appellees pay to appellants the costs on appeal to be taxed by the Clerk of this Court.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 6, 2023
Lyle W. Cayce
Clerk

No. 22-30351

---

Arthur Sampson, Jr.; Lovely M. Feagins,

*Plaintiffs—Appellees,*

versus

United Services Automobile Association; USAA General Indemnity Company,

*Defendants—Appellants.*

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:19-CV-896

---

Before Barksdale, Southwick, and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

  Defendants-appellants United Services Automobile Association and USAA General Indemnity Company ("USAA") contract with insureds to pay "Actual Cash Value" ("ACV") for totaled vehicles. USAA calculates ACV using the CCC One Market Valuation Report ("CCC") rather than, e.g., the National Automobile Dealers Association guidebook ("NADA") or Kelley Blue Book ("KBB"). Plaintiffs-appellees are USAA-insureds whose vehicles were totaled and who received ACV as determined by CCC. Plaintiffs allege that CCC violates Louisiana statutory law, that they would have

been paid more if USAA used NADA, and that they are owed the difference. Plaintiffs sought certification below for a class of USAA-insureds who were paid less under CCC than they would have been paid under NADA, and the district court granted it, pursuant to Rule 23(b)(3). USAA timely appeals class certification under Federal Rule of Civil Procedure 23(f). On appeal, the parties dispute, among other things, whether common questions across the class involving damages and liability predominate over individual differences between class members, as required for class certification under Rule 23(b)(3).

We hold that plaintiffs fail to show injury, and therefore fail to establish USAA's liability on a class-wide basis, because they fail to demonstrate entitlement to the NADA values for their totaled vehicles. Therefore, we VACATE and REMAND.

## I

USAA contracts with insureds to pay a vehicle's ACV in the event of a total loss. Under Louisiana Revised Statutes § 22:1892B(5)(a)-(c), ACV "shall be derived by using" a method that falls into one of three broadly defined categories, one of which is use of "a generally recognized motor vehicle industry source." § 22:1892B(5)(b). USAA uses CCC, but plaintiffs argue that CCC is not a legal method because it is "not a generally recognized used motor vehicle source" and does not fall into the other broadly defined categories. CCC also violates Section 22:1892B(5)(b) in a second way, plaintiffs claim, by negatively adjusting vehicles' ACV based on such things as damage to the vehicle. CCC is therefore doubly violative of Section 22:1892B, and moreover, it calculates ACV at a lower value than "generally recognized used motor vehicle industry sources such as NADA or KBB a majority of the time."

No. 22-30351

Plaintiffs filed suit in federal court claiming breach of contract, and violations of insurers' duty of good faith under Louisiana Revised Statutes § 22:1973 (formerly § 22:1220). Plaintiffs then moved for class certification pursuant to Rule 23(b)(3) on behalf of the following class:

> All persons insured by USAA and USAA General Indemnity Company who have made a claim for first party total loss, which claim USAA and USAA General Indemnity Company evaluated using CCC, or a predecessor product from August 15, 2010 to the present date and whose CCC Base Value was less than the NADA Fully Adjusted Value ("Clean Retail").[1]

Plaintiffs also moved to appoint Arthur Sampson, Jr., and Lovely M. Feagins as class representatives. Sampson's CCC value was $5,999 but his NADA value was $6,725. Feagins's CCC value was $12,651 but her NADA value was $13,775.

The district court certified the class on May 3, 2022. USAA timely moved for permission to appeal under Federal Rule of Civil Procedure 23(f), which this court granted on June 10, 2022. The district court had jurisdiction over this case because the amount in controversy exceeds $5 million and at least one class member is a citizen of a state different from a defendant. 28 U.S.C. § 1332(d)(2). This court has jurisdiction under 28 U.S.C. § 1292(e)

---

[1] Plaintiffs state that the difference between NADA Clean Retail Value and NADA Adjusted Clean Retail Value is that only the latter has been adjusted for mileage and options. CCC Base Vehicle Value "is the value derived from a straight line average of the comparable vehicles CCC locates after applying options, its comparable vehicle condition adjustment algorithm and its mileage adjustment algorithm." CCC Adjusted Vehicle Value is "the value reached after CCC applies a second loss vehicle condition 'adjustment' if required, and/or any unrelated prior damage adjustments. This is the final value before tax, title and license fees are applied. It is the value that USAA refers to as ACV."

and Rule 23(f). The only issue before this panel is the propriety of class certification under Rule 23.

## II

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). Class certification requires that plaintiffs' claims "can be proved on a classwide basis," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 356 (2011), and it is the party seeking to maintain a class action who "must affirmatively demonstrate his compliance with Rule 23," *Comcast*, 569 U.S. at 33 (quotations and citation omitted). This is not "a mere pleading standard"; the plaintiff must "be prepared to prove" that the requirements of Rule 23 are met "*in fact*." *Id.* (citation omitted).

This court has emphasized that district courts must "rigorously" consider Rule 23's prerequisites and that "[t]his 'rigorous analysis' mandate is not some pointless exercise . . . . It matters." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 547 (5th Cir. 2020). "[C]reative uses" of the class action form "are perilous" because improper certification "can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit. And the existence of a class fundamentally alters the rights of present and absent class members." *Id.* (quotations and citations omitted). Therefore, "[n]o less than due process is implicated." *Id.*

Certification requires plaintiffs to satisfy all requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the three requirements listed in Rule 23(b). *Wal-Mart*, 564 U.S. at 345-46. Here, the district court certified the class pursuant to Rule 23(b)(3), and the primary issue on appeal is Rule 23(b)(3)'s predominance requirement.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations and citation omitted).

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Id.* (quotations and citation omitted).

"We review a district court's class certification 'for abuse of discretion in recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation.'" *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 701-02 (5th Cir. 2012) (quoting *Regents of the Univ. of Cal. v. Credit Suisse First Bos.*, 482 F.3d 372, 380 (5th Cir. 2007)). "[W]e owe considerable deference to district courts in reviewing certification decisions." *Unger v. Amedisys Inc.*, 401 F.3d 316, 325 (5th Cir. 2005). "An abuse of discretion occurs only when all reasonable persons would reject the view of the district court." *Cleven v. Mid-Am. Apartment Cmtys., Inc.*, 20 F.4th 171, 176 (5th Cir. 2021) (citation omitted).

"However, whether the district court applied the correct legal standard in reaching its decision on class certification is a legal question that we review de novo. If the 'district court premises its legal analysis on an erroneous understanding of governing law, it has abused its discretion.'"

No. 22-30351

*Ahmad*, 690 F.3d at 702 (quoting *Regents*, 482 F.3d at 380); *accord Cleven*, 20 F.4th at 176.

### III

We first evaluate the district court's choice of NADA values in the context of determining *damages*, then evaluate the district court's choice of NADA values in the context of determining *liability*.

*A. NADA Values in the Damages Context*

The district court's opinion explains that plaintiffs put forward a damages model on which "damages as to each class member who was paid less than what the statute mandates would be the difference paid to [the] insured by CCC and what a system, like NADA, that complies with [§ 22:1892], would pay." But plaintiffs' proposed damages model and their proposed class definition, which the district court accepted, did not pick out a system *like* NADA. They picked out NADA and NADA alone. And they did so even though the district court and the plaintiffs have treated other valuation methods, including KBB and others, as equally legal and legitimate alternatives.[2]

---

[2] Plaintiffs' briefing describes KBB as a "generally recognized used motor vehicle industry source." The district court listed, as "statutorily permissible value[s]," the valuations in "other guidebooks such as KBB, Edmonds, Blackbook, Manheim Market Reports, etc." And in the closely related case *Shields v. State Farm*, the district court further confirmed this understanding. *See* No. 6:19-CV-01359, 2022 WL 37347, at *8 (W.D. La. Jan. 3, 2022) ("As for the damages model and common evidence, the court agrees that NADA is not required for a determination of ACV under Louisiana law. However, it is one lawful method of determining ACV under Louisiana Revised Statute 22:1892(B)(5). The difference between a lawful measure, such as NADA, and the [illegally] derived ACV provides an appropriate measure for determining who might have suffered economic harm . . . .").

Case: 22-30351 Document: 00516948230 Page: 10 Date Filed: 10/30/2023
Case 3:20-cv-00835-JDC-CBW Document 413-1 Filed 07/30/24 Page 10 of 16 PageID #: 6251

No. 22-30351

USAA argues that the "correct measure of damages is . . . the shortfall, if any, between the amount USAA paid an insured and what they were entitled to under their policy," but plaintiffs' damages model does not measure this amount for any class member. Instead, USAA contends, their model arbitrarily uses NADA values even though those values do not account for a vehicle's unique condition—e.g., damage to the vehicle—which is relevant to its actual cash value. By ignoring the obvious fact that a vehicle's ACV depends on such things as *how damaged it is*, which is something NADA does not account for, the district court failed to hold plaintiffs to their high standard to establish that the Rule 23 requirements had been met *in fact*.[3]

Plaintiffs respond that they are not required to demonstrate that NADA equals cash value in fact, because "as a matter of law, NADA values, *are* proof of actual cash value." This follows from the fact that NADA satisfies the requirements of § 22:1892(B)(5). *But see Gautreaux v. La. Farm Bureau Cas. Ins. Co.*, 362 So. 3d 896, 899 (La. App. 3 Cir. Dec. 29, 2022) ("La. R.S. 22:1892(B)(5) does *not require* the use of NADA clean retail values."), *writ denied*, 360 So. 3d 837 (La. 5/16/23); *see also Curtis v. Progressive N. Ins. Co.*, No. CIV-17-1076-PRW, 2020 WL 2461482, at *3 (W.D. Okla. May 12, 2020) ("Oklahoma law does not require Progressive to pay the NADA value on total loss claims; as a result, Plaintiff's contention that damages can easily be determined as to each putative class member by subtracting WCTL[4] payments from NADA values is wrong.").

---

[3] NADA's Director of Strategic Innovation testified that "individual vehicles almost certainly will have an actual value that is higher or lower than the estimated values published in the [NADA] Guidebook."

[4] This is short for "WorkCenter Total Loss," *see Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 411 (5th Cir. 2017), a valuation product similar to CCC and subject to similar litigation.

USAA replies that even if NADA values could be treated as proof of ACV on the ground that NADA is a legally permissible method of determining ACV under § 22:1892, it would follow that KBB values (and Edmunds, etc.) *can also* be treated as proof of ACV. This creates an explosion of predominance issues because USAA has the due process right to argue, for each individual plaintiff, that damages should be determined by a different legally permissible method that would produce lower damages than NADA (or no damages at all). For example, USAA argued in its reply brief that it "submitted unrebutted evidence showing that 9.2% of claims from a claim file sample were (1) valued *less* than NADA (meaning that they are included in the class), but (2) still *greater* than KBB (meaning that the insured was paid more than actual cash value as a matter of law under Plaintiff's theory)." These insureds "are *unharmed*" as a matter of law under plaintiffs' theory.

Plaintiffs offer several responses.[5] First, they claim that their damages model is precisely the model considered and accepted in *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408 (5th Cir. 2017). Indeed, *Slade* did bless a damages model much like this one. *See id.* ("Plaintiffs contend that damages can be calculated by replacing Defendant's allegedly unlawful WCTL base value with a lawful base value, derived from either NADA or KBB . . . . This

---

[5] One response made by plaintiffs in their brief, which we find unconvincing, is that "[i]nherent in this argument is the ludicrous assertion than an insurer can pick and choose different valuation methods for different insureds, depending on which generates the lowest value. Such a practice would be the epitome of arbitrary and capricious claims practice." But plaintiffs fail to cite any authority for this argument, let alone authority that explains the legal relevance of plaintiffs' hyperbolic claims. Plaintiffs' use of the term "arbitrary and capricious" likely refers to La. R.S. 22:1973B(5), which says an insurer is liable for breaching a duty of good faith when it fails "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." But plaintiffs do not cite to this statute, let alone explain why USAA would fail to pay the amount "due" an insured if it pays them the lowest ACV estimate *allowed by law*.

damages methodology fits with Plaintiffs' liability scheme because it isolates the effect of the allegedly unlawful base value. . . . Plaintiffs' damages methodology is sound."). But we have scoured the record in *Slade* and find no indication that that court ever considered whether it was appropriate to determine damages by arbitrarily choosing NADA (or arbitrarily choosing KBB) over objections like the ones USAA raises here. In *Slade*, Progressive simply did not raise this set of objections. Our court in *Slade* did not resolve an issue that was not raised before it and that it did not consider. *See Ochoa-Salgado v. Garland*, 5 F.4th 615, 620 (5th Cir. 2021).

Second, plaintiffs and the district court say that whether NADA is an appropriate measure of ACV is "a merits question[] not necessary to the class certification question. What matters for class certification is not whether Plaintiffs' damages model is correct, but whether Plaintiffs' damages model can be applied in a uniform manner across the class. But Rule 23 is not a context where courts must assiduously separate certification from merits issues; they will often be deeply intertwined, and here, if plaintiffs have failed to put forward evidence or a theory that coherently indicates NADA is *the* measure of ACV, this is a serious concern that cannot be ignored by simply describing it as a "merits" issue. *See Comcast*, 569 U.S. at 33-34 (Rule 23 analysis "will frequently entail overlap with the merits of the plaintiff's underlying claim. That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." (cleaned up)).

And indeed, USAA is right to complain that plaintiffs' own theory undermines the possibility that NADA is somehow *the* correct measure of ACV. As USAA states, "The crux of Plaintiffs' theory is that any 'generally recognized used motor vehicle industry source' . . . provides conclusive evidence of a vehicle's actual cash value, 'as a matter of law.'" Therefore, "[i]f NADA values are conclusive proof of actual cash value because they

No. 22-30351

come from a 'generally recognized used motor vehicle industry source,' then any *other* values from such sources are, too." Whether the district court can certify this class and put off USAA's arguments for consideration at the merits stage is the *question*; it is not itself an answer to USAA's arguments.

Third, plaintiffs suggest that it is within the district court's broad discretion to choose NADA as the measure of damages for class certification purposes even if the choice is, in some sense, arbitrary. After all, plaintiffs "have asserted that NADA, not KBB, is the correct measure of damages." And "[w]henever damages are proven through a model, it is almost inevitable that there will be class members who would do better [or worse] under a different model."

Plaintiffs are correct about the wide discretion afforded to district courts in choosing among imperfect damages models. "[C]ourts have consistently held" that "estimative techniques" for measuring damages "need not be exact at the class certification stage. Rather, models that reasonably account for the defendant's liability are acceptable even if there are measures of uncertainty due to the difficulty of ascertaining damages." 4 Newberg and Rubenstein on Class Actions § 12:4 (6th ed.) (quotations and citations omitted). Therefore, given the wide discretion afforded to district courts in choosing among estimative damages models at the class certification stage, and because we detect a more fundamental problem for the certification of this class, discussed presently, we grant *arguendo* that the district court did not reversibly err by choosing an imperfect damages model at the class certification stage.

### B. NADA Values in the Liability Context

But USAA also argues that under Louisiana law, an essential element of a breach of contract claim is damages or injury. *See Sanga v. Perdomo*, 167 So. 3d 818, 822 (La. App. 5 Cir. 2014) ("[P]roof of damages is an essential

No. 22-30351

element to a breach of contract claim."); *accord Mautner v. Ware*, 296 So. 3d 1209, 1213-14 (La. App. 5 Cir. 2020); *A Caring Home Care Servs., LLC v. de la Houssaye*, 224 So. 3d 422, 424 (La. App. 3 Cir. 2017). And even granting that the district court had wide discretion to choose among *damages* models at the class certification stage, USAA is correct to argue that its discretion is more limited in the context of determining *liability*.

Indeed, whereas ample authority suggests courts have great discretion in choosing among damages models, especially estimative damages models at the certification stage, those authorities do not say that courts have similar discretion in choosing among models of injury and liability. *See, e.g.*, *Terrebonne Fuel & Lube, Inc. v. Placid Refin. Co.*, 681 So. 2d 1292, 1300 (La. App. 4 Cir. 1996) (There must be "proof that there has been some damage," i.e., "that damage has actually occurred, before there is discretion to assess the *amount* of damages.").

Second, it is well established that common questions may predominate under Rule 23(b)(3) "even though other important matters will have to be tried separately, *such as damages*." *Tyson Foods*, 577 U.S. at 453 (emphasis added). But while damages are specifically described among these "other important matters," liability and injury are not. *Accord* 2 Newberg and Rubenstein on Class Actions § 4:53 (6th ed.) ("A series of issues recur in the predominance analysis. Several of these—[including] individual damage[s] . . .—rarely defeat a finding of predominance.").

We find particularly instructive the Ninth Circuit's opinion in *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134 (9th Cir. 2022). In that case, after finding that under Washington law plaintiffs must show injury to show liability for breach of contract, the Ninth Circuit upheld a denial of class certification in an almost identical context to the case at bar, finding that predominance was not satisfied where plaintiff class members could show

11

that an insurer's use of CCC was unlawful but could not prove an actual underpayment by class-wide proof. *See id.* at 1139 ("Plaintiffs respond that these individualized issues of harm are 'damages issues' that can be tried separately. But that's not right either: if there's no injury, then the breach of contract and unfair trade practices claims must fail. That's not a damages issue; that's a merits issue.").

We are persuaded by *Lara*. In response to that case, plaintiffs appear to argue for the first time on appeal that damages are not an element of a *bad faith* claim. Plaintiffs did not make this argument below, so the district court did not consider it, and USAA mentions bad faith only once in its opening brief.[6] We conclude that this argument is not properly before out court on appeal. And once we put that argument aside, we do not see that plaintiffs even try to distinguish *Lara*.

We hold that, with respect to plaintiffs' breach of contract claim, the district court's choice of NADA is not simply an arbitrary choice among imperfect *damages* models. It is an arbitrary choice of a *liability* model, and a district court's wide discretion to choose an imperfect estimative-damages model at the certification stage does not carry over from the context of damages to the context of liability. We further conclude that plaintiffs have not demonstrated that NADA equates to ACV *in fact*, *see Comcast*, 569 U.S.

---

[6] USAA has been arguing from the start of this litigation that bad faith under La. Rev. Stat. § 22:1973 requires an underlying breach of contract, which requires proof of damages. For the first time in their response brief on appeal, plaintiffs raise *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 860 So. 2d 1112, 1118-19 (La. 2003), wherein, plaintiffs claim, the Louisiana Supreme Court "unequivocally held" that claims for violations of the duty of good faith under La. Rev. Stat. § 22:1973 do not require proof of damages as an element. "[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal." *LeMarie v. La. Dept. Trans. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). Thus, while the district court is free to consider plaintiffs' *Sultana* argument on remand, we do not consider it for the first time on appeal.

No. 22-30351

at 33, nor put forward a coherent theory on which NADA, but not KBB or Edmunds, etc., can serve as a determinant of injury and liability *as a matter of law*.

Therefore, because "[n]o less than due process is implicated" in class certifications, *Chavez*, 957 F.3d at 547, we VACATE the district court's grant of class certification and REMAND.